**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-40652**
_____


**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

**Plaintiff-Appellee,**

**versus**

**WAL-MART STORES, INC., doing business as**
**Wal-Mart Store #1296 - San Benito, Texas,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(B-95-CV-123)**
_____

July 29, 1998

Before WIENER, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[1]

Primarily at issue in this Title VII case is whether sufficient evidence supports the jury's finding that, by refusing to rehire Charlene Brock, Wal-Mart both discriminated against her because of her race and retaliated against her because she and/or her mother had complained of discrimination. For this appeal from

---

[1] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the judgment in favor of the Equal Employment Opportunity Commission, we **REVERSE** and **RENDER** judgment for Wal-Mart.

I.

Wal-Mart hired Brock in December 1992 as a part-time seasonal cashier at its San Benito, Texas, store. She had a high school education; had prior job experience at K-Mart; and had also worked as a babysitter and substitute teacher. She was the only black employee in the store at that time.

On commencing her employment, Brock signed a statement acknowledging that a reduction in force might be necessary after peak business seasons; that, if terminated during such reduction and eligible for rehire, she had to re-apply; that Wal-Mart was not obligated to contact her for possible rehire; and that employment applications were valid for only 60 days.

In early February 1993, Irma Adkins was promoted from assistant manager to manager of the San Benito store. (As discussed below, Adkins became a central figure in Brock's Title VII claims.)

Brock's 90-day performance evaluation in mid-February 1993 rated her as "meeting requirements" and noted that she was dependable, flexible, punctual, and maintained a good attitude with the other sales associates (Wal-Mart's term for employees). Nevertheless, a little over a week later, Brock was discharged during a reduction in force; but, she was classified as "eligible

for rehire". (Brock testified at trial that she did not think that her race had anything to do with this reduction in force release.)

Four months later, in late June, Brock submitted an employment application to the San Benito Wal-Mart. In mid-July, her mother complained to the store manager, Adkins, that, as a result of racial discrimination, Brock had not been rehired. Adkins, who is hispanic, told Brock's mother that Wal-Mart does not discriminate; and that she would look into Brock's application. Two days later, Adkins called Brock's mother and asked if Brock would come for an interview that afternoon. Following the interview, Brock was hired as a part-time sales associate in the electronics department. Later, Brock was reassigned to a cashier position; although she did not request the transfer, she had no objection to it.

Brock testified that, a few months after her July 1993 return to work for Wal-Mart, Adkins began treating her worse than other employees: that Adkins gave her the "cold shoulder" and would not respond when Brock greeted her; that she was assigned to work at a cash register directly in front of Adkins' station; and that Adkins closely monitored her while she worked. But, although she felt "uncomfortable" about Adkins' observation, she did not so advise Adkins. Brock testified also that Adkins required her to scrape gum off the floor, which Brock felt was not part of her job duties; that she was the only cashier to whom Adkins assigned such tasks; and that, without prior notice so that she could dress accordingly,

Adkins assigned her to work outdoors in inclement weather in the garden center.

Brock testified that she felt that Adkins was mistreating her because of her race. However, she could not explain why, if Adkins disliked her for that reason, Adkins did not behave the same way toward her either prior to her February 1993 reduction in force release or during the first few months after her July 1993 rehire.

Brock acknowledged that there was a posted procedure for complaints, but testified that she did not follow that procedure because she did not want to lose her job. Wal-Mart's "open door policy" regarding employee complaints provides:

> Wal-Mart's commitment is to maintain a work environment that is free of harassment and inappropriate behavior. In keeping with this commitment, harassment or inappropriate behavior directed at an Associate by anyone, whether it's a member of Management, a Customer, or a Vendor, will not be tolerated. If you feel you've been a victim of harassment, or if you have witnessed or have knowledge of behavior that violates Wal-Mart's policy, use the Open Door Policy. If your immediate Supervisor is the problem, go to the next level of Management. Be as specific about the incident as possible.... Remember, there will be no retaliation for reporting harassment or inappropriate conduct. If you feel Wal-Mart has not properly addressed your claim, you have the right to file a complaint with your State's Human Rights Commission or the Equal Employment Opportunity Commission (EEOC).

According to Brock, "[I]f I would have called or wrote a complaint, they would have probably figured, well, she's the only black one

that works here.  And I would have st[oo]d out, and they would have known it was me and they would have c[o]me down on me".

In late September 1993, Brock received a 90-day performance evaluation, rating her as "meeting requirements" and noting that she was punctual, worked well with her immediate supervisor, and had good customer service skills.  And, in early December, she received a six-month evaluation, in which her rating improved; she was complimented for her strengths, which included punctuality, dependability, flexibility, and friendliness with customers and co-workers.  Adkins did not participate in either evaluation.

In April 1994, approximately nine months after her rehire, Brock's part-time position was eliminated as part of another reduction in force; but, she was again classified as "eligible for rehire".  Thirty other part-time and full-time employees were also released then.  Brock refused to sign the exit interview form, however, because she felt that Adkins was discharging her because of her race.

The next day, Brock's mother wrote, and hand-delivered, a letter to Adkins, stating that she believed her daughter was released because she was black.  Brock testified that it was not her mother's idea to claim that Wal-Mart discharged her because of her race; but that she had her mother write the letter because her handwriting was better.  Wal-Mart did not respond to that letter.

A week later, Brock's mother sent a similar letter to Wal-Mart's chief executive officer. Again, she did not receive a response.

In early June 1994, Brock filed a discrimination charge with the EEOC, alleging that her April 1994 discharge was based on race. (As discussed below, in late August she added to the charge.)

A week later, on 10 June, Brock submitted an employment application at the San Benito Wal-Mart. On 15 August, Adkins resigned as manager of that store. Steve Estrada replaced her.

Brock submitted a second application on 17 August to the San Benito store. A week later, she amended her EEOC charge, alleging that, since her termination, she had submitted "several" applications and had not been rehired. (Brock testified that she had made "about four" applications prior to amending her EEOC charge; but only two were introduced into evidence.)

On 13 September, Brock's mother wrote a letter to the new San Benito store manager, Estrada, stating that Brock had previously worked at the store; that she had reapplied; and that she wanted to be considered for a position. *The letter made no reference to any alleged discriminatory treatment or retaliation*, and was accompanied by another employment application. Brock testified that she did not receive a response from Estrada; Estrada, that he did not recall receiving the letter.

On 12 October 1994, Brock submitted another application to the San Benito store.  And, on 20 October, she applied at Wal-Mart's Harlingen, Texas, store.  She was interviewed for a position at the Harlingen store, but not hired.

On 1 November, Brock reapplied at the San Benito store. (Although Brock testified that she applied "maybe seven times" at the San Benito store, she introduced only five applications into evidence.)

The EEOC filed this action in August 1995 against Wal-Mart, alleging that it refused to rehire Brock because of her race and/or in retaliation against her because she and/or her mother had complained of discrimination.  *The EEOC did not complain about Brock's April 1994 reduction in force discharge, even though Brock had alleged in her original EEOC charge that it was due to discrimination.*

In August 1996, Brock began working part-time for El Globo.

Following two days of trial that September, the jury was asked to decide whether, from June through December 1994, Wal-Mart discriminated and/or retaliated against Brock by not rehiring her. The jury found discrimination and retaliation, and awarded $12,000 for lost wages, $5,000 for past and future compensatory damages, and $100,000 in punitive damages.  Judgment as a matter of law was denied Wal-Mart both before and after the verdict.

II.

Wal-Mart challenges the sufficiency of the evidence concerning discrimination, retaliation, compensatory damages, and malice; the refusal of a jury instruction defining malice; the amount of exemplary damages; and the admission of evidence regarding the reasons for Adkins' resignation. Because the evidence is insufficient to sustain liability for either discrimination or retaliation, we do not reach the remaining issues.

"A [FED. R. CIV. P. 50] motion for judgment as a matter of law ... in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). "On review of the district court's denial of such a motion, the appellate court uses the same standard to review the verdict that the district court used in first passing on the motion." *Id*. And, in reviewing the denial of a Rule 50 motion for judgment, we apply the standard found in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc), *overruled in part on other grounds*, *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc):

> [T]he Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment as a matter of law] is proper.

*Boeing*, 411 F.2d at 374.  Of course, in this regard, although "we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses."  *Hiltgen*, 47 F.3d at 700.

A.

A Title VII discrimination claim is subject to the well-known burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  "[T]he plaintiff first must establish a prima facie case by a preponderance of the evidence; once established, the prima facie case raises an inference of unlawful discrimination."  *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996) (en banc).  "The burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action."  *Id*. at 992-93.  "If the defendant meets its burden, the presumption raised by the plaintiff's prima facie case disappears."  *Id*. at 993.  To prevail, the plaintiff must prove that "the defendant's articulated rationale was merely a pretext for discrimination".  *Id*.

The EEOC contends that it is entitled to judgment because it established a prima facie case and Wal-Mart failed to articulate a legitimate, nondiscriminatory reason for not rehiring Brock.  But, "[a]fter a case has been fully tried on the merits, the *McDonnell Douglas* burden shifting analysis ceases to be of import to an appellate court."  *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d

- 9 -

927, 933 (5th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 767 (1997); *see also* **Travis v. Board of Regents**, 122 F.3d 259, 263 (5th Cir. 1997) (internal quotation marks and citation omitted) ("When a case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the **McDonnell Douglas** ritual is unimportant"), *cert. denied*, ___ U.S. ___, 118 S. Ct. 1166 (1998).  "Instead, our inquiry becomes whether the record contains sufficient evidence to support the conclusions reached by the trier of fact."  **Patterson**, 90 F.3d at 933.

In any event, even assuming that the **McDonnell Douglas** burden of production is relevant at this stage of the proceedings, Wal-Mart satisfied that burden.  Although it did not present any witnesses, it presented its case through cross-examination of the witnesses called by the EEOC, many of whom were Wal-Mart employees. Wal-Mart presented evidence that its corporate policy is to make hiring decisions based on nondiscriminatory factors, and that such policy forbids discrimination, as reflected in the associate handbook:

> Our commitment to equal opportunity for all associates is reinforced by policy and by actions.  We do not tolerate discrimination of any kind.  Not only is discrimination against our beliefs, it's against the law.

Wal-Mart also introduced evidence of training programs offered to managerial and supervisory personnel regarding discrimination. Moreover, although Wal-Mart did not present a specific

explanation or reason why Brock (as opposed to other applicants) was not rehired, it elicited evidence that, during the time period in which Brock sought to be rehired at its San Benito store (June through December 1994), that store hired only nine persons, some of whom had been released in prior reductions in force. Olivia Juarez, who served as personnel manager at the San Benito store, testified that applications are filed by month, in the order in which they are received. The applications do not reflect the applicant's race. Janie Lopez, personnel manager at the Harlingen store, testified that, when an opening occurs, the first applications pulled and reviewed are those filed on the day the opening arises, because the older the application, the more likely the applicant has found other employment; and that, in reviewing applications, no effort is made to give preference to applicants who have prior Wal-Mart experience. San Benito store manager Estrada testified similarly — when an opening occurs, the first applications reviewed are those received that day.

Considering that the San Benito store weekly receives between 10 to 30 applications, and that only nine persons were hired between June and December 1994, it is not surprising that Brock was among those not hired for one of those nine openings. As Brock acknowledged on cross-examination, if numerous persons apply for only a few openings, some will, and some won't, be hired.

The EEOC contends that, based on the evidence that Brock was the only black working at Wal-Mart, that she was treated worse than

all other employees, and that she was released despite her experience and good performance reviews, the jury could infer that, from the beginning, Adkins disliked Brock because of her race. Wal-Mart urges that Adkins' feelings toward Brock are irrelevant, because Adkins did *not* play a role in making hiring decisions at the San Benito store.

Adkins did not testify at trial, because neither party could locate her. And, Brock testified that she did not know who made hiring decisions at the San Benito store.

Glen Gibardi, a Wal-Mart district manager, testified that, generally, hiring is done by a hiring committee; that, typically, the store manager is *not* part of that committee; that, although a store manager can overrule the hiring committee, in 13 years he had never seen that done; and that he did not know whether Adkins had anything to do with the decision not to rehire Brock.

Lopez, the Harlingen Wal-Mart personnel manager, testified that hiring at the Harlingen store is done by the hiring committee; and that, although the store manager has the "last word", she could not recall a situation where the manager became involved in making hiring decisions.

Juarez, who served as San Benito Wal-Mart personnel manager from June 1993 through April 1994, and was a customer service manager at that store at the time of trial, testified that hiring

at the San Benito store was done by a hiring committee; and that Adkins did *not* participate in the hiring process.

Estrada, who became manager of the San Benito store in September 1994, after Adkins' 15 August resignation, testified that the hiring committee has the power to do the hiring, but that he liked to have some input as to who was hired.

To support its assertion that Adkins participated in the decision not to rehire Brock, the EEOC relies on Gibardi's testimony that a store manager can overrule any decision made by the hiring committee; Estrada's testimony that he liked to have input as to who was hired; and Lopez's testimony that the store manager has the last word on hiring. At most, this testimony supports an inference that Adkins had the authority to participate in hiring decisions at the San Benito store; but, *none* of the witnesses testified that she did so. The only evidence that Adkins ever exercised that authority is when she called Brock to come for an interview in July 1993, after her mother had complained to Adkins of discrimination. (As noted, Brock was then hired.)

Even assuming that the evidence supports an inference that Adkins participated in hiring decisions at the San Benito store, the probative value of that inference is limited. As discussed, Adkins resigned on 15 August 1994. Between Brock's reduction in force discharge on 20 April 1994 and Adkins' resignation on 15 August 1994, Brock applied for employment only once (on 10 June).

Brock's next application is dated 17 August, *after* Adkins' resignation. Accordingly, Adkins' treatment of, and feelings toward, Brock are relevant only with respect to the period between 10 June and 10 August (although Adkins resigned on 15 August, Brock's 10 June application was valid for only 60 days).

The fact that Brock was the only black employed at the San Benito store during both periods of her employment does not support an inference that Wal-Mart refused to rehire her because of her race. That her race did not necessarily contribute to her not being hired is demonstrated by her having been hired twice before. Brock was hired initially in December 1992; and she was hired a second time, in July 1993, even after her mother had complained to Adkins about discrimination.

Brock testified that there are not many blacks in San Benito, which is predominantly an hispanic community; and that she would not expect too many blacks to apply for jobs at the San Benito Wal-Mart. Although Estrada testified that the San Benito store weekly receives approximately 10 to 30 applications, Juarez, who served as personnel manager at that store from June 1993 through April 1994, testified that the store received only about three applications *per year* from blacks. (This testimony was based on the fact that, although, as noted, race is not shown on the application, applicants personally hand Juarez the applications, or request them from her to complete.) There was also evidence that, between April

1994 and the time of trial (September 1996), the San Benito store hired two blacks, one of whom had previously worked at Wal-Mart.

The only evidence which supports the EEOC's assertion that Adkins treated Brock worse than all other employees at the San Benito store is Brock's earlier-described testimony that, a few months after she was re-hired in July 1993, Adkins gave her the "cold shoulder", made her clean gum off the floor, and made her work in inclement weather in the garden center, but did not similarly treat other employees. As stated, Adkins did not testify.

Brock admitted that all Wal-Mart associates are expected to keep the floors clean, but asserted that such expectations did not include scraping gum off the floor. However, Brock described only one occasion on which she was asked to do so. She also admitted that all Wal-Mart employees are expected to fill in where they are needed, when they are needed; and that, from July 1993 to April 1994, she was required to work in the garden area only two or three times. And, on those few occasions, she was allowed to call her mother to bring her a coat.

Assuming *arguendo* that Brock's testimony could support an inference that Adkins disliked her, it does not support a further inference that such dislike was based on Brock's race. As discussed, Brock admitted that she had no problems working with Adkins either prior to the February 1993 reduction in force or

during the first few months after she was rehired in July 1993, *after* her mother had complained *to Adkins* about discrimination. Brock could not explain why, if Adkins' alleged dislike was based on race, it did not manifest itself until after they had worked together for several months.

As further evidence that Adkins disliked Brock because of her race, the EEOC points to Adkins including Brock among those discharged in the April 1994 reduction in force, despite Brock's having received good performance evaluations. (Again, the EEOC did *not claim* that discharge was discriminatory.) The EEOC relies on the testimony of district manager Gibardi and store manager Estrada that Wal-Mart has no specific policy of deciding who will be released during a reduction in force; and that performance is taken into consideration in selecting the employees to be retained during such a reduction.

No evidence was presented regarding the factors Adkins considered in determining which employees would be affected by the April 1994 reduction in force. Juarez, who was then serving as personnel manager at the San Benito store, testified that part-time workers (such as Brock) were usually the first to be released in such a reduction. More important, as noted, the EEOC does *not* claim that Brock's release as part of the April 1994 reduction was discriminatory. And, it did not introduce evidence regarding the performance of those employees retained in April 1994.

Accordingly, whether Wal-Mart had a policy of considering employee performance in determining who to release, or whether Adkins followed such a policy in deciding to include Brock in the reduction in force, is not probative of discrimination in the decision not to rehire Brock.

The EEOC asserts also that *Adkins* was even responsible for Brock's failure to be hired at the *Harlingen* store in October 1994. It relies on the testimony of Lopez, the personnel manager of that store, that, when interested in a candidate with prior Wal-Mart experience, she would routinely call that Wal-Mart's store manager for a reference. The EEOC maintains that the jury could *infer* that, after speaking with Adkins, the Harlingen store did not view Brock favorably.

But, this contention is not supported by the record. Adkins resigned from the San Benito Wal-Mart *on 15 August 1994*. Brock did not even apply for employment at the Harlingen store *until 20 October*. Accordingly, the jury could not reasonably infer that anyone at the Harlingen store spoke with Adkins about Brock. And, Estrada, who succeeded Adkins as the San Benito store manager, testified that no one had ever called him and asked about Brock.

In sum, Adkins' behavior toward Brock supports nothing more than a possible inference that Adkins may have disliked Brock. But, it goes without saying that "evidence of mere dislike is not enough to prove pretext under Title VII". **Grimes v. Texas Dept. of**

*Mental Health & Mental Retardation*, 102 F.3d 137, 143 (5th Cir. 1996).

As noted, Adkins' motives are relevant only for the period between Brock's 10 June application and Adkins' 15 August resignation. Decisions with respect to Brock's subsequent applications at the San Benito store were made after Estrada became manager. The EEOC did not present evidence as to either the identity of the members of the hiring committee, or a discriminatory motive on the part of either those committee members, or Estrada, or any other Wal-Mart employees involved in the hiring process during that time period.

The EEOC relies heavily, however, on Brock's being classified as eligible for rehire when she was released during the April 1994 reduction in force. It points to Gibardi's testimony that the determination whether an employee is eligible for rehire depends on work performance, such as dependability, trustworthiness, punctuality, and providing good customer service; and that these factors would be taken into consideration when a former employee reapplies at a Wal-Mart store. The EEOC relies also on Estrada's testimony that such factors would be important and considered in deciding who to rehire; that Brock's previous employment with Wal-Mart would be considered a "plus"; and that, in reviewing Brock's qualifications, including her education and experience, he did not see any reason why she would not have been qualified to fill any

- 18 -

positions that became available in the cashier or sales floor category. The EEOC asserts that, in the light of Gibardi's testimony that it costs Wal-Mart approximately $1500 to train each new associate, Wal-Mart logically would have an incentive to hire former employees who had performed well in order to avoid that cost.

Wal-Mart's failure to rehire Brock may have been unwise, illogical, or uneconomical. But, it again goes without saying that Title VII does not mandate prudent hiring decisions, *only* non-discriminatory ones. *Cf*. ***Bodenheimer v. PPG Indus., Inc.***, 5 F.3d 955, 959 (5th Cir. 1993) (addressing claim under Age Discrimination in Employment Act).

Next, the EEOC points to the notation "wrong #" written on the corner of Brock's application at the Harlingen store. The notation was in a different color ink than used by Brock to complete the application. She testified that the notation was not on the application she tendered to the Harlingen store; and that the address and telephone number listed on her application were correct. Lopez, personnel manager at the Harlingen store when Brock applied, testified that she did not know what the notation referred to, other than possibly the telephone number being wrong.

Lopez testified also that a person with previous Wal-Mart experience, who had received good evaluations, would be considered as long as the hours they could work were unrestricted. Brock

stated on the application that she had worked at the San Benito Wal-Mart; and that there were no restrictions on the hours she was available to work. As stated *supra*, Brock was interviewed by the Harlingen store, but not hired.

The EEOC comments that "the strange notation went unexplained, leaving the jury to weigh the evidence and possibly infer that the notation was a signal or code indicating the wrong person or race for the job". But, any such inference would be based on nothing but pure speculation, which is obviously inadequate to sustain a finding that the Harlingen store did not hire Brock because of her race.

Finally, the EEOC asserts that the discrimination finding is supported by evidence that Brock was as qualified, and in many instances more qualified, than those hired at the Harlingen store. The EEOC notes that, of the persons hired at that store, many had significantly less education, less experience in retail sales, and/or no experience working at a Wal-Mart.

Wal-Mart does not dispute that Brock was qualified, and does not claim that the persons it hired were better qualified than Brock. In any event, even assuming that such a comparison of qualifications is relevant in this case, it is well-settled that an employer has discretion to choose among qualified candidates, so long as the decision is not based upon unlawful criteria. *Wright v. Western Elec. Co.,* 664 F.2d 959, 964 (5th Cir. 1981); *Amburgey*

*v. Corhart Refractories Corp.,* 936 F.2d 805, 814 (5th Cir. 1991) (it is not for the court to decide which employee is best qualified; the employer is entitled to make that decision for itself).

Our court has stated that evidence that a plaintiff is "clearly better qualified" than the candidate chosen for a position *can* support finding that the employer's articulated reason is pretextual. *See* **Amburgey**, 936 F.2d at 814 (summary judgment). This was explained further in **Odom v. Frank**, 3 F.3d 839 (5th Cir. 1993) (bench trial):

> Generally, a court's belief that an unprotected applicant who has been promoted is less qualified than a protected applicant who has been passed over, will not in and of itself support a finding of pretext for discrimination. If, however, the passed over applicant who is protected against discrimination is *clearly better qualified* for the position in question, a finding of pretext masking discrimination can be supported by the promotion of the less qualified person.

**Odom**, 3 F.3d at 845-46 (emphasis in original). *See also* **Nichols v. Loral Vought Systems Corp.**, 81 F.3d 38, 42 (5th Cir. 1996) (summary judgment in an age discrimination case; "[a] genuine issue of material fact exists when evidence shows the plaintiff was 'clearly better qualified' than younger employees who were retained").

The evidence does not establish that Brock was *clearly better qualified* than those hired at the Harlingen store after she applied on 20 October 1994. There is no evidence that a particular level

- 21 -

of education, experience in retail sales, or prior experience working for Wal-Mart were qualifications for the positions for which Brock applied. Even assuming that such qualifications might be beneficial to Wal-Mart, and that it should have considered them in making its hiring decisions, that decision is for Wal-Mart, not a jury, to make.

In any event, as stated, the evidence shows that Brock's qualifications were not "clearly better" than those of the persons hired at the Harlingen store. The EEOC introduced into evidence the employment applications of all those hired to fill hourly positions at that store between April 1994 and the September 1996 trial; and Lopez, the Harlingen Wal-Mart personnel manager, testified that Brock was "as qualified" as "most people" hired for a part-time cashier's position. This is insufficient to prove that Brock was not hired at the Harlingen store because of her race.

The same is true with respect to those hired at the San Benito Wal-Mart. The EEOC also introduced into evidence the employment applications of all the hourly associates hired at that store between April 1994 and the September 1996 trial. Brock was not "clearly better qualified" than any of them.

In sum, considering the evidence in the light most favorable to the EEOC, no rational trier of fact could conclude that Wal-Mart refused to rehire Brock because of her race.

B.

The other liability finding is that, because Brock had complained of discrimination, Wal-Mart retaliated by not rehiring her. Title VII provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge ... under this subchapter." 42 U.S.C. § 2000e-3(a).

1.

Despite the fact that Brock's amended EEOC charge does not allege retaliation, the district court had jurisdiction over the retaliation claim presented by the EEOC's complaint. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (filing of a timely charge with EEOC is not a jurisdictional prerequisite to a Title VII suit in federal court; instead, it is a condition precedent and is subject to waiver and estoppel); *Lawrence v. Cooper Communities, Inc.*, 132 F.3d 447, 451 (8th Cir. 1998) (same). Wal-Mart has never asserted that the EEOC's retaliation claim is beyond the scope of Brock's EEOC charges.

In any event, had Wal-Mart done so, it would probably have been futile. Regardless of whether an action is brought by the EEOC or an individual, the scope of the judicial complaint may be as broad as the scope of the EEOC investigation which can reasonably be expected to grow out of the initial charge of discrimination. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) (suit by individual); *Harris v. Amoco*

***Production Co.***, 768 F.2d 669, 684 (5th Cir. 1985) (discussing scope of civil action brought by EEOC), *cert. denied*, 475 U.S. 1011 (1986); *see also* **Brown v. Hartshorne Pub. Sch. Dist. No. 1**, 864 F.2d 680, 682 (10th Cir. 1988) (internal quotation marks and citation omitted) ("[w]hen an employee seeks judicial relief for incidents not listed in [her] original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC").

Because the alleged retaliation occurred after Brock filed her initial EEOC charge, the scope of the EEOC's investigation of the initial charge could reasonably be expected to encompass it. *See* **Barrow v. New Orleans S.S. Ass'n**, 932 F.2d 473, 479 (5th Cir. 1991) (a district court has jurisdiction to hear a claim of retaliation, even though a charge alleging retaliation has not been filed with the EEOC, when the alleged retaliation grows out of an administrative charge that is properly before the court); **Gupta v. East Tex. State Univ.**, 654 F.2d 411, 414 (5th Cir. 1981) (same). *See also* **Malarkey v. Texaco, Inc.**, 983 F.2d 1204, 1209 (2d Cir. 1993) (where an alleged act of retaliation occurs *after* an individual has filed an EEOC charge, the retaliation is reasonably related to the charge); **Seymore v. Shawver & Sons, Inc.**, 111 F.3d 794, 799 (10th Cir.) (internal quotation marks and citations

omitted) (when plaintiff seeks judicial relief for incidents not alleged in EEOC charge, "the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the [EEOC] charge, including new acts occurring during the pendency of the charge before the [EEOC]"), *cert. denied*, ___ U.S. ___, 118 S. Ct. 342 (1997).  As the Tenth Circuit noted, "[t]his rule obviates the need for filing repetitive complaints with the [EEOC] where the defendant engages in retaliatory actions after a complaint has been filed with the [EEOC]".  *Id*.

Moreover, several courts have held that the EEOC is not limited to the specific discrimination alleged by the charging party, but may sue for any type of discrimination it uncovers during an investigation of the charging party's complaint.  Under this rule, if a valid charge of discrimination is filed, the EEOC may bring a civil action encompassing any discrimination which is uncovered during a reasonable investigation of that charge.  *See* **EEOC v. General Elec. Co.**, 532 F.2d 359, 373 (4th Cir. 1976) (cited with approval by our court in **Harris v. Amoco Production;** the standing of the EEOC to sue under Title VII cannot be controlled or determined by the standing of the charging party); **EEOC v. Gurnee Inn Corp.**, 914 F.2d 815, 819 n.6 (7th Cir. 1990) (a suit by the EEOC is not limited to the specific discrimination that the charging party has standing to raise); *see also* **EEOC v. Allegheny**

*Airlines*, 436 F. Supp. 1300, 1304 (W.D. Pa. 1977) (EEOC should not be limited, in its right to bring suit, to the type of discrimination specifically alleged by the charging party or to a type of discrimination which the charging party had standing to assert).

2.

> A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action.

*Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir.), *cert. denied*, ___ U.S. ___, 118 S. Ct. 336 (1997). "The ultimate determination is whether, 'but for' the protected conduct, the employer would not have engaged in the adverse employment action." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998).

In this case, the first two elements for a retaliation claim are not at issue: Brock filed an EEOC charge and subsequently applied unsuccessfully for employment. But, the third element is. Wal-Mart contends that the EEOC failed to present substantial evidence of a causal connection between Brock's filing the EEOC charge and Wal-Mart's failure to hire her. It bases this on there not being any evidence that anyone involved in the hiring process knew that Brock and/or her mother had complained of

discrimination.[2]  *See **Corley v. Jackson Police Dept.***, 639 F.2d 1296, 1300 (5th Cir. 1981) ("employer cannot be guilty of retaliation for an employee's opposition to discrimination unless [employer] is aware of that opposition").

Wal-Mart relies on the evidence, discussed *supra*, that hiring decisions at its San Benito store were made by a hiring committee. It contends that the EEOC did not present any evidence regarding the identity of the members of that committee, or whether those members were aware of any discrimination complaints by Brock and/or her mother.

The EEOC points out that Brock's personnel file contained the April 1994 letter to Adkins from Brock's mother, in which she complained that Brock was being discriminated against because of her race, and notes that there is evidence that, when considering rehiring a former employee, Wal-Mart would look at their files or call the person's former store manager for a reference. The EEOC asserts that, in the light of Brock being "more than amply

---

[2]   The court instructed the jury that, "[w]hen an employer decides not to hire or rehire an individual because she *or someone acting on her behalf* complained of discrimination, that is retaliation." (Emphasis added.)  Wal-Mart did not object to that instruction or to the wording of the jury interrogatory allowing the jury to find retaliation based on complaints by Brock "and/or her mother".  Because Wal-Mart does not contend  that Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), does not encompass complaints made by persons other than an employee, we assume, without deciding, that Brock's retaliation claim may be based on complaints made by her mother.  However, nothing in this opinion should be construed as holding that such non-employee complaints are covered by § 2000e-3(a).

qualified for the positions", and that it was standard practice for Wal-Mart to check the personnel files of former employees applying for rehire, it is "highly likely" that the persons making the hiring decisions were aware of Brock's discrimination complaints, and chose not to hire her for that reason.

Brock testified that she did not know whether anyone at the San Benito or Harlingen stores knew that she had complained of discrimination or filed an EEOC charge during the time she was applying for employment. Former San Benito personnel manager Juarez testified that a new file is started if a former employee is rehired, and that the old file is not used. She testified that she never reviewed a former employee's personnel file when that former employee was being considered for rehire; that she "would not know" whether a department manager would look at a closed file on a previous employee; and that it would be "up to the hiring committee" whether to look at a personnel file of a former employee being considered for rehire.

As stated, there is *no* evidence that Adkins participated in making hiring decisions during the relevant time period (between 10 June, the date of Brock's first application after the April 1994 reduction in force, and 10 August 1994, 60 days later; Adkins resigned prior to Brock submitting additional applications). Although there is evidence that Adkins was aware both of Brock's mother's discrimination complaints and of Brock's initial EEOC

charge, the evidence does not support an inference that she refused to rehire Brock in retaliation. After all, despite the fact that Brock's mother complained to Adkins of discrimination after Brock's first discharge, Brock nevertheless was rehired in July 1993.

As noted, Estrada, who became manager of the San Benito store in September 1994 after Adkins' resignation, testified that he liked to have input in the hiring process. He testified, however, that he only made decisions as to which applicants would be interviewed by the hiring committee after it presented him with recommendations. There is *no* evidence that Estrada was presented with the opportunity to approve or reject any of Brock's applications.

Again, there is *no* evidence as to the identities of the members of the hiring committee which selected the persons hired at the San Benito store between June and December 1994. The only evidence about such membership is that the committee was made up of department managers, who are hourly employees. Estrada testified that, at the San Benito store, the only persons who had access to personnel files were the manager, the assistant managers and the personnel manager; the department managers did not. Accordingly, there is *no* evidence that the hiring committee had access to Brock's personnel file.

Estrada testified further that personnel files of former employees are separated from those of current employees; and that

he liked to look at former employees' files regarding their past performance when considering them for rehire. But, there is *no* evidence that he reviewed Brock's personnel file; in fact, he testified that he was *not* aware that Brock had applied for employment.

As noted, Harlingen store manager Lopez testified that, as a matter of policy, a former employee's store manager would be called for a reference check on a former Wal-Mart employee applying for a position at the Harlingen store. However, she did not know whether such a reference check was made with respect to Brock's application. And, again, Estrada, manager of the San Benito store when Brock applied at the Harlingen store, testified that *no one* had ever asked him about Brock.

Viewing this evidence in the light most favorable to the EEOC, no rational trier of fact could conclude that Brock would have been rehired between June and December 1994 "but for" her having filed an EEOC charge or her mother having written letters complaining of discrimination.

### III.

For the foregoing reasons, the judgment is **REVERSED** and judgment is **RENDERED** in favor of Wal-Mart.

*REVERSED and RENDERED*

- 30 -